UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MATTHEW STITT JOHNSON, <br><br> Defendant. | Case No. 22-cr-129 (JMC) |

### MOTION TO SUPPRESS IDENTIFICATION TESTIMONY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Matthew Stitt Johnson, through undersigned counsel, respectfully moves this Court, pursuant to the Fifth Amendment to the United States Constitution, to suppress the use as evidence of all testimony relating to all out-of-court identifications allegedly made by the witness, previously described as MV3 in this case, and any in-court identifications derived from any out-of-court identification. Counsel requests a hearing on this Motion. In support of this Motion, counsel states the following facts.

### Factual Background

In pertinent part, Mr. Johnson is charged with one count of Second Degree Child Sex Abuse, in violation of D.C. Code §22-3009. According to the indictment, the charge arose out of an indictment that is alleged to have occurred between January 1, 2015 and December 31, 2016.

On February 10, 2022, MV3 gave a forensic interview at the Child Advocacy Center. At that time, she reported, apparently for the first time that some time between January 1, 2015 and December 31, 2016, that she was sexually abused by a person named "Max." MV3 provided a number of descriptors of Max, none of which applied to Mr. Johnson. MV3 described Max as:

- Someone who would take care of them only at 27th Street;
- One of her mother's old friends;
- Someone her mother hadn't previously spoken to in years;
- Someone who stayed over one night;
- Someone who doesn't have other names;
- Someone who she think's real name is Max;
- Someone who was staying at the house for a night or two;
- Someone who slept on the floor in the hallway;
- Someone she saw only a couple of times around 27th Street after the sexual assault.

Despite the fact that none of these descriptors apply to Mr. Johnson, the interviewer (who was conducting the interview with FBI agents observing) decided to do a confirmatory identification procedure with MV3.

When shown the photograph of Mr. Johnson, MV3 said, "I think so, I think. I don't know, I may recognize that picture." She then said, "I think that's the person

Max, I think." When asked why, she said "Because they have like close resemblance of, close resemblance."

After the confirmatory procedure, MV3 said that Max never came to any of the other two residences that the family lived in (in contrast to the government's allegations about Mr. Johnson).

The interviewer then left the room, presumably to consult with the law enforcement officers who were observing the interview and asked MV3 if anyone stayed at the house who had dreads because Mr. Johnson had longer dreadlocks during the time of the alleged incident.  MV3 said, "She has lots of friends who have dreads." MV3 was asked if Max had dreads – she agreed but described the dreadlocks as "Duke Bootee braid – up, I mean Duke Bootee locks.  They looked like he was doing freeforms."[1] She further described the hair as "not going down to his head" – "like up."

## MEMORANDUM OF POINTS AND AUTHORITIES

Because law enforcement obtained these identifications of Mr. Johnson through the use of procedures so suggestive as to create a substantial likelihood of misidentification, the Fifth Amendment requires suppression of any out-of-court and in-court identifications of Mr. Johnson by MV3.  The totality of the circumstances surrounding these identifications demonstrates that they are

---

[1] The late Duke Bootee wore his hair up atop his head. https://www.savannahmagazine.com/19119-2/.  Freeform locks are locks that are grown organically without any manipulation or hair products. https://www.essence.com/hair/hair-products-tools/20-low-porosity-hair-products/

unreliable, and therefore violate of due process. As a result, the Court should exclude all testimony relating to any out-of-court and in-court identifications from Mr. Johnson's trial.

## I. All identification testimony must be suppressed because the government violated the Fifth Amendment.

The Due Process Clause of the Fifth Amendment prohibits the admission at trial of identification testimony where the circumstances of an out-of-court identification procedure are so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Ash*, 461 F.2d 92, 97 (D.C. Cir. 1972) (quoting *Simmons v. United States*, 390 U.S. 377, 383 (1967)). In determining whether the identification procedure violates due process, courts examine the "totality of the circumstances" surrounding the procedure. *See Stovall v. Denno*, 388 U.S. 293, 302 (1967); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). When law enforcement officers utilize a suggestive identification procedure, an in-court identification may only be made if the government can point to indicia of reliability sufficient to justify its admission. *Neil v. Biggers*, 409 U.S. 188, 201 (1972); *Manson*, 432 U.S. at 114.

"Photographic identifications must be excluded if they result from a viewing so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Mason v. United States*, 414 F.2d 1176, 1182, (D.C. Cir. 1969). "The showing of a single photograph is, like all identification

procedures involving a single suspect, highly suggestive." *Id*. In *Simmons v. United States*, Justice Harlan, writing for the Court, noted the inherent potential for undue suggestivity in the use of photographs:

> It must be recognized that improper employment of photographs by police may sometimes cause a witness to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of individuals without indication who they suspect, there is some danger that the witness may make an incorrect identification.

*Simmons*, 390 U.S. at 383.

In this case, the use of a single-photo identification, which was unjustified by any exigency or other justification, was wholly unnecessary and unduly suggestive.

Once the suggestivity involved in an identification procedure becomes apparent, the Government has the burden of proving, by clear and convincing evidence, that the reliability of the identification outweighs the role of the suggestivity in producing the tainted identification. *United States v. Wade*, 388 U.S. 218, 241 (1967) (analogizing the process in analyzing suggestivity in identification procedures to the approach in considering the taint of a Fourth Amendment violation); *Clemons v. United States*, 408 F.2d 1230, 1246 (D.C. Cir. 1968). The determination rests on a balance between the degree of suggestivity and the strength or weakness of factors indicating reliability. *Manson*, 432 U.S. at 114. The reliability factors include the "opportunity of the witness to view the criminal at the time of the crime, the accuracy of the witness' prior description of the criminal,

the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil*, 409 U.S. at 192.

While the government alleges that Mr. Johnson knew the complainant in this case, but for the suggestive identification procedure, MV3's interview entirely points to a different person altogether. She identifies the person as named "Max," says he does not go by any other name and says that she only saw him at the 27th Street address after he spent one or two nights. The government's theory alleges that the three minor victims were abused at three different addresses and that Mr. Johnson lived with the family for an extended duration.

An analysis of the reliability factors in the present case—particularly the duration of the witnesses' alleged observations, the time lapse between the alleged incident and the identification procedures, the fact that it is unclear whether the witness was a stranger to Max, the suggestive nature of the procedure, and the identifying information the witness provided law enforcement which pointed to an altogether different person reveals the unreliability of the witnesses' identification. As a result, all testimony relating to out-of-court and in-court identifications of Mr. Johnson made by MV3 should be suppressed. Where, as here, out-of-court identifications are unduly suggestive and unreliable, the Government should not be permitted to elicit in-court identifications. *Mason v. United States*, 414 F.2d 1176, 1182 (D.C. Cir. 1969) ("Photographic identifications must be excluded if they result from a viewing 'so impermissibly suggestive as to give rise to a very substantial

likelihood of misidentification.  The showing of a single photograph is, like all identification procedures involving a single suspect, highly suggestive").    Both the out of court and in court identifications should thus be excluded.

## Conclusion[2]

For the reasons set forth above, and for such other reasons as this Court may determine at a hearing on this motion, Mr. Johnson respectfully requests that this motion be granted and that the Court suppress the use of any identification testimony from MV3 in his trial.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
MARIA JACOB
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

---

[2] The defense will be prepared for the Court to conduct both suppression hearings on August 17th but will not oppose hearings at a later date to allow the government to respond to this Motion.