UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MATTHEW STITT JOHNSON,**<br><br>          **Defendant.** | Case No. 22-cr-129 (JMC) |

## MOTION TO PRECLUDE EXPRT TESTIMONY

### Introduction

The government has noticed Mr. Anthony Imel, as an expert in the field of forensic examination of video and images. On August 11, 2022, the government provided Mr. Imel's report. Mr. Johnson now moves this Honorable Court to preclude Mr. Imel's testimony under FRE 702, 401, and 402 as it is not helpful, reliable, or relevant, and even if marginally relevant it is substantially outweighed by FRE 403 concerns.

### Background

According to the government, Mr. Imel will be qualified to testify as an expert in evaluating "similar identifying characteristics between the images of the Defendant and images on evidence Item 1B1. ECF 32. Purportedly, Mr. Imel will testify "about the methods used to perform his analysis" and "about any conclusions he was able to reach based on his analysis and his comparison of those images." ECF 32. The government has not yet provided what methodology Mr. Imel

supposedly followed and has not proffered how this evidence will assist the jury beyond what it can see with its own eyes.

## Argument

I. The Court should preclude Mr. Imel's testimony under FRE 702

    a. FRE 702

FRE 702 imposes a special obligation upon district court judges to act as gatekeepers to ensure that expert testimony meets the FRE 702 requirements of helpfulness and reliability. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *Patteson v. Maloney*, 968 F. Supp. 2d 169, 173 (D.D.C. 2013).  In order to be admitted under FRE 702, the proposed expert testimony must be (i) likely to help the jury and (ii) reliably grounded in the methods and procedures of science.  *See Patteson*, 968 F. Supp. 2d at 173.

    b. **The government fails to show that Mr. Imel's testimony meets FRE 702's helpfulness requirement.**

Mr. Imel's testimony is unlikely to help the jury, as average contemporary jurors are able to see for themselves.  The supposed "analysis" conducted by Mr. Imel involves comparing the different body parts depicted in government exhibit compared with known photographs of Mr. Johnson's hands and arms.  Mr. Imel produced eight video reports, and for two of the images, concluded that the images "appear to be Johnson."  The remaining six images "could not be identified or eliminated as being Johnson."  The two identifying features described by Mr. Imel

1

contain nothing scientific nor forensic – they are "knuckle creases" that Mr. Imel counted and moles that are "similar." Exhibit A, Imel Report.

The government cannot meet 702's helpfulness requirement because there is simply nothing helpful about the proffered testimony. The prosecution is free to point out different features that they believe to be similar but to do so through the imprimatur of an expert witness is as improper as it would be to say a particular mugshot appears to look just like the defendant.

Just as courts have found that a general understanding of otherwise complex topics, like the fallibility of memory or the meaning of ambiguous words, fall "within the ken of the ordinary juror," so does Mr. Imel's testimony reporting observations made with the naked eye. *See, e.g., United States v. Heine*, Case No. 3:15-cr-00238-SI-2, 2017 WL 5260784 at *2 (D. Or. Nov. 13, 2017) (holding that the average juror would understand that "memories are fallible and may deteriorate over time."). This Court should therefore preclude his testimony as unhelpful.

    c. **The government fails to show that Mr. Imel's testimony meets FRE 702's reliability requirement.**

Mr. Imel's proposed testimony also fails to meet FRE 702's requirement that expert witnesses be reliable. Reliability signifies that an expert witness's testimony is based upon a reliable methodology, rather than subjective belief or unsupported speculation. *See Kumho Tire,* 526 U.S. at 150-52 (explaining that the gatekeeping requirement exists "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant

field."); *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) ("[T]he expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." (quoting *Daubert,* 509 U.S. at 590)).

Mr. Imel's proposed testimony is based primarily on his observations, that is, his ability to see and count moles and knuckle creases. As an experience-based expert, his methods do not "lend itself to scholarly review or traditional scientific evaluation," such as through routine testing, statistical error rates, or peer-review type analysis. *See Est. of Gaither ex rel. Gaither v. D.C.*, 831 F. Supp. 2d 56, 69 (D.D.C. 2011). Although expert testimony "unsupported by peer review" and "lack[ing] statistical analysis or studies" is not *per se* inadmissible, the Supreme Court has nonetheless required experience-based experts in past instances to explain how often the expert "has produced erroneous results" to demonstrate the reliability of their analysis. *See id.*

The government, however, provides no evidence—not even a rough or non-scientific metric—to demonstrate the validity of Mr. Imel's conclusions essentially identifying Mr. Johnson as the perpetrator. For example, Mr. Imel says that a "mole in similar position and size" helped lead him to the conclusion that the "individual appeared to be Johnson." But when a mole on the right middle finger was not observed on the video, Mr. Imel did not exclude Mr. Johnson. Instead, he concluded that "due to limited image detail and the differences on the right middle

3

finger, the questioned individual could not be identified or eliminated as being Johnson." Exhibit A. Imel Report.

The report provides no hint as to when Mr. Imel would conclude that an image could be identified or when the image could be eliminated. While fingerprint evidence for example, requires the analyst to find a certain number of points to make an identification, Mr. Imel appears to have no methodology and relies solely on discretion. As a result, the Court should find that the government has failed to establish that Mr. Imel's proposed testimony is "the product of reliable principles and methods" and preclude his testimony. Fed. R. Evid. 702.

Mr. Imel's analysis will not include scientific, technical or other specialized knowledge. He will simply be making the same observations that the jury can but will be carrying the heft of the expert title.

## II. The Court should preclude Mr. Imel's proposed testimony as irrelevant under FRE 401 and 402

Mr. Imel's proposed testimony is irrelevant to the government's case in chief. Evidence is relevant only if it has a tendency to make a fact *of consequence* more or less probable than it would be without the evidence. Fed. R. Evid. 401 (emphasis added). He will testify to no method for inclusion, exclusion or a method behind concluding when a feature is identification, elimination or neither. It is therefore inadmissible under FRE 401 and 402.

## III. Even if found to be marginally relevant, Mr. Imel's proposed testimony fails FRE 403 balancing

4

Even if Mr. Imel's testimony identifying Mr. Johnson's mole and knuckle creases has some marginal relevance, it is substantially outweighed by FRE 403 concerns. This type of evidence will confuse the issues and invade the provence of the jury as to the ultimate issue. The proposed testimony, in effect, would likely generate feelings of sympathy from the jury and outrage towards Mr. Johnson for reasons not relevant to the charges he faces. It creates a significant risk that the jury could be swayed to convict Mr. Johnson as a way of seeking justice for the victims without regard to evidence of guilt. This Court should therefore further preclude Mr. Imel's testimony under FRE 403.

## Conclusion

For the reasons contained herein and any others that may appear to the Court, Mr. Johnson respectfully requests that the Court preclude Mr. Imel's testimony under FRE 702, 401, and 402 because it is not helpful, reliable, or relevant, and even if marginally relevant it is substantially outweighed by FRE 403 concerns.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

*/s/*
Eugene Ohm
Maria Jacob
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

5